FOR THE DISTRICT OF NEW MEXICO

**JOSE E. GONZALES, PETER J. GOMEZ,
EMELINA GRANT, TERESITA GARCIA
MARTINEZ and LEONORA ERNESTINA
MONTOYA,**

    **Plaintiffs,**

    v.                                                                                           No. 00-CV-60 WPJ/RS ACE

**UNITED STATES OF AMERICA, and BILL
RICHARDSON, Secretary of the
DEPARTMENT OF ENERGY,**

    **Defendants.**

---

**PAJARITO PLATEAU HOMESTEADERS, INC.,**

    **Plaintiffs,**

.    v.                                                                                           No. 01-CV-588 MCA/RLP ACE

**UNITED STATES OF AMERICA, et al.**

    **Defendants.**

**SPECIAL MASTER'S INITIAL FINDINGS OF FACT AND CONCLUSIONS OF
LAW AS TO TRACT E 24, AND AMENDED TRACTS BO1 AND E9**

**I.  GENERAL FINDINGS OF FACT AND CONCLUSIONS OF LAW**

All of the general findings and conclusions set forth in the Special Master's Initial Findings of Fact and Conclusions of Law file on April 14, 2006 are incorporated by reference herein as if fully set forth. Based upon those general findings, what follows are the findings and conclusions specific to the last of the tracts which are the subject of litigation in this case.

1

## II.  TRACT E24 SPECIFIC FINDINGS AND CONCLUSIONS

### A.  CLAIMS AND PROCEDURAL HISTORY

**Claim 1.** The descendants of Adolfo Garcia, one of the sons of the original Patentee, Juan Luis Garcia by his first wife, Maria Leonora Gonzales Garcia, claimed that Adolfo was the sole owner of this tract at the time of the acquisition by the Government in World War II.  This claim was disputed by all of the other descendants of Juan Luis Garcia and his first wife, and the descendants of Juan Luis Garcia and his second wife, Maria Donaciana Martinez Garcia.

**Claim 2.** The descendants of the children of Juan Luis Garcia and his first wife claimed that those children were the owners of the tract by deeds acquired from Juan Luis Garcia at the time of the acquisition.

**Claim 3**. The living children and the descendants of the deceased children of Juan Luis Garcia and his second wife claimed that all of the descendants of Juan Luis Garcia were entitled to receive a distribution according to intestate succession.

A hearing took place on March 16, 2006.  At that hearing, the descendants of Jose Carlos Naranjo, son of Delfinia Garcia, daughter of Juan Luis Garcia and his first wife, were represented by Rudy Martin.  The descendants of Juan Luis Garcia and his second wife were represented by Juan Luis Garcia and Tony Borrego.  The heirs of Adolfo Garcia were represented by Michael Martinez.

At the onset of the hearing, the represented descendants of Jose Carlos Naranjo and the descendants of his second wife stipulated that both the first wife's (including Adolfo) and the second wife's descendants should be entitled to one half for each family of any award.   The heirs of Adolfo Garcia at that time did not join in that stipulation.

Originally, the claimants represented by Mr. Martin and Mr. Garcia were claiming an interest in tracts E25, E28 and E29.  These claims were withdrawn at the beginning of the hearing.     It did not become apparent until after the

2

hearing that many eligible claimants who had filed claims, and some who had not, were not represented at the hearings. It also became clear that some of them may not have received any notice of their need for representation, or of the possibility of their filing a claim.

On May 4, 2006, a conference call hearing occurred, in which the Special Master informed the parties that, based upon the evidence presented, there would most likely be a ruling against Adolfo Garcia's claim, so it would be necessary to determine all of the eligible heirs of Juan Luis Garcia. Further, since many eligible claimants may not have received any notice of the hearings, they should have an opportunity to perfect their claims. The parties were directed to work with the Pajarito Plateau Homesteader's Association to update their family tree (Exhibit 2 to the August 30, 2005 hearing) and assist the Association in locating the living heirs of Juan Luis Garcia who may have a claim in Tract 24.

During that May 4 hearing, the fact that Juan Luis Garcia died intestate and had two families by his two wives was conceded by all parties represented. Therefore, claim 1, of the heirs of Adolfo Garcia was the only claim remaining to be litigated. Adolfo's descendants maintained their claim that he was the sole owner, but stipulated with the others that, if they were unable to prove that he was the sole fee simple owner of the property at the time of the acquisition by the Government, then he would receive a share along with all others who were descendants of Juan Luis Garcia by either marriage. The record was left open

3

for Adolfo Garcia's heirs to provide any further title documentation, for any rebuttal documents to be submitted, and for the family trees to be updated.

A second hearing was held on August 18, 2001. At that hearing, the heirs of Adolfo Garcia presented no further title documents.  An updated family tree prepared by the Homesteader's Asssociation was introduced into evidence. Since that time, additional information as to located heirs was provided to the Homeowner's Association by the families which has been incorporated *sua sponte* by the Special Master into an updated SM Exhibit 1.

The Special Master acknowledges the effort by the Homesteader's Association and family members and representatives in locating the heirs of Juan Luis Garcia and Maria Leonora Gonzales Garcia. This effort was a significant aid to the Special Master in the resolution of these claims.

## B.  FINDINGS OF FACT

During these hearings, testimony was taken and exhibits were presented. Based upon that evidence, the information provided by the Homeowner's Association and updated claims forms provided by individual claimants, the following facts set forth below are found to be true by a preponderance of the evidence.

1.  Juan Luis Garcia was born in 1850.  He received a patent in 1892 from the United States Government to a 160 acre tract of land whose description is: "E ½ of the NE ¼ of Section 23, and the W ½ of the NW ¼ of Section 24, Township 20 N, Range 6 E, NMPM".  This is the exact description used in condemnation Cause 640 and The Map to describe Tract E 24. (Exhibit D Garcia 1, and The Map).  Tract E 24 was acquired by the United States Government for the Manhattan Project during World War II in condemnation Civil Cause 640 in the Federal District Court for New Mexico.

2  At the time he acquired the patent, Juan Luis Garcia had a first wife, whose name was Maria Leonora (sometimes known as Leonor) Gonzales Garcia, (hereinafter Leonora), who predeceased him before 1907.  (1907 census DG Exhibit E).

3.   At the time of Leonora's death, Juan Luis Garcia had seven children by her: Adolfo; Ezequiel; Manuel; Jose Luis;  Delfinia (married name Naranjo); Guadalupe (married name Quintana); and Leonor.

4.  After Leonora's death, Juan Luis, by 1907 had remarried to Maria Donaciana Martinez (hereinafter Donaciana).  They had six children; Jose Aurelio (sometimes mentioned as Adelaido);  Jose Gregorio;  Irinia (married name Borrego); Luisita (married name Montoya); Teresina (married name Lucero); and Sarita  (married name Lucero);

5.  Juan Luis Garcia died in 1931 intestate.  All of these children and Donaciana survived him at the time of his death. Donaciana died in 1939 intestate. Leonor died in 1940 without spouse or issue (he may have had a wife, Lugardita, who also died without issue).

6.  Esequiel died in 1941, leaving his wife Consuela and eight children, Maclovio, Esquipula, Meliton, Rosendo, Anita, Petrita, Rosinda and Juan Bautista.

7.  Esequiel's children Maclovio, Esquipula and Juan Bautista are now deceased, with no spouse or issue.  After diligent search, the whereabouts of Anita Garcia (married name Armijo), her spouse Luis, or any issue cannot be determined.   No claimant has made any claim in this case based upon any of these relationships, and the time for doing so has passed.

8.  Guadalupe Garcia Quintana died in 1943, leaving her husband Juan L. Quintana.  After due and diligent search, the whereabouts of the heirs of Guadalupe Garcia Quintana or Juan L. Quintana cannot be determined.  No claimant has made any claim in this case based upon that relationship, and the time for doing so has passed.

9.  The Order Confirming Fee Title and the Declaration of Taking in cause 640 in which Tract E24 was listed was filed on May 23, 1944.   (SM Exhibit 1, p. C 017). Both the composite map ("The Map")  and the individual Tract Map (SM Exhibit 1 p. C 015) shows the Tract owner as "Adolpho (Adolfo) Garcia et. al".  The declaration of taking lists the purported owners as Manuel, Esequiel, Adolpho, Delfinia, Guadalupe, Adelaido, Irinia, Lucia, Sara and Teresina Garcia, and a Filadelphio Rodriguez. All of these except Filadelphio are the children of Juan Luis Garcia.   Filadelphio Rodriguez was the husband of Marina, one of Adolpho's deceased daughters (he would not have had an intestate interest since Adolfo was still living).  One living child, Jose Luis, is not mentioned, and none of Esequiel's living children are mentioned.

5

10. The only judgment found was signed on September 13, 1945, one month after the Manuel Sanchez pleading was entered, although its filing date cannot be read (SM Exhibit 1 pp C 108). The owners described for E24 in that judgment are: "Jose Gregorio Garcia, 12/16ths, Esquipula Garcia, 11/182nds, Rosendo Garcia, a 3/364ths interest, and Juan Garcia, an incompetent, 3/364ths of total compensation" (P. B 108). This judgment clearly does not identify all of the owners or all of the undivided interests to the property.

11. SM Exhibit 1 contains many documents from the file of that and the other condemnation lawsuits, but it does not contain all of them. Many times during these proceedings documents were provided which were more likely filed than not filed, even though they do not appear within that Exhibit. One of these, titled …"Claim of Esquipula Garcia Tract 24" (DGM Exhibit 10) is a pleading by an attorney, Manuel A. Sanchez, filed on August 13, 1945. This pleading names all of the descendants of Juan Luis whether by Leonora or Donaciana. It further explains that deeds were issued for 10 acres each to all of Leonora's children by Juan Luis, which were never recorded. It further provides that Donaciana's children are willing to abandon any claim by those deeds, in exchange for a stipulated agreement that all of the family members would evenly divide the compensation between the two families.

12. A copy of a document exists entitled "Settlement, Juan Luis Garcia Tract, Tract E-24C, Cause 640 Civil, U.S. District Court, Valuation Fixed by Government Appraisal $2200.00." This document provides for a distribution "…1/2 to the heirs of Juan Luis Garcia and Leonor Garcia…$805.00, and ½ to the heirs of Juan Luis Garcia and Donaciana M.Garcia…$805.00." (DGM Exhibit 11). The payments made were to Manuel, Adolfo, Esquipula (for the heirs of Esequiel), Jose L. Garcia, Delfina G. Naranjo, Juan L Quintana (husband of Guadalupe), Jose Gregorio, Jose Aurelio, Luisita Montoya, Irinea G. Borrego, Teresina G Lucero, Sarita G. Lucero, Luis Garcia and Manuel A. Sanchez.

13. In that payment schedule, excluding witness and expense fees paid, the payments are for fee simple ownership interests in Tract E24. Leonora's children (including Adolfo) or deceased children's descendants received a 1/7 share of half of the award, and Donaciana's received 1/6 shares of the other 1/2. This payment best reflects the belief of the condemning authority as to the rightful ownership of Tract E24 at the time of the acquisition by the United States Government, based upon a settlement of claims by the heirs as set forth in the Alfonso Sanchez pleading.

14. Even though not found in SM Exhibit 1, both the Manuel Sanchez pleading and the payment schedule are authentic, and were filed in Cause 640, the first as a proposal accepted by the families, and the latter as the payment schedule from which those owners of the property were paid according to an agreement reached to settle the issue of ownership of Tract E24.

**C.  CONCLUSIONS OF LAW**

**1.  Statement of Reasoning for the Findings and Conclusions**

What the final judgment shows in Cause 640 is not as legally significant in this case as it may have been in others.  The only judgment found in SM Exhibit 1 or provided by the parties does not determine the owners of all of the undivided interests in Tract E24.  What happened to the other 364 undivided interests? Where are the other children of Juan Luis who owned the property?  How could so many missing interests remain unaccounted for?  On its face, the judgment does not determine the fee owners of the tract.  It is not even close.

Because the only evidence of adjudication is so completely erroneous, the presumption of validity of the condemnation judgments provided in the General Findings and Conclusions filed April 14, 2006 (p. 32) is immediately rebutted. Therefore, title must be proved based upon the evidence presented now.

**A.  Adolfo Garcia's descendant's claim that he was the only fee simple owner.**

**1.  Record title from the original owner**

Record title is an unbroken chain of title from the original owners of a property. If a party can prove a clear record title, there is no need to prove title by adverse possession  Rael v. Cisneros, 82 N.M. 705, (1971).

Adolfo Garcia and his wife Maria Vigil Garcia owned Tract E25 at the time of the acquisition by the government.  That is clear and undisputed, was adjudicated then, and has been adjudicated in the April 16, 2006 Order.  This

7

tract was located at the mouth of a canyon known as "Garcia Canyon", adjacent to E24, which was located within the canyon.   Any record title to tract E24 must come from his Father, Juan Luis Garcia.

None of the numerous deeds or patents presented by Adolfo Garcia's heirs in this case into him, with the possible exception of one (A Garcia Exhibit C p. 2) establish any record title by Adolfo to Tract E24.   That deed is dated 1907 from his father, Juan Luis to Adolfo for ten acres and was recorded in 1944.

There is a question whether the deed is in Tract E24 at all.   The best landmark reference in the deed is "El Ojo Del Agua" (the Water Spring)  which may be Pine Spring (Ojo del Pinobete) and by stipulation is located in lands adjacent to E24.

However, the description of surrounding owners are all of Adolfo's brothers by Leonora, so it is more than likely that the deed is one of the ten acre deeds from Juan Luis to Leonora's children referred to in the Manuel Sanchez Cause 640 pleading.   For the purposes of this decision, it is accepted as being one of those, and the ten acres are accepted as being within Tract E24.

As for all of the many other various deeds and patents into Adolfo presented in this case,  it required a painstaking tracing of each and every one of those described by township sections to establish that they are not even in the same quarter sections of the township and range in which Tract E24 is located (DG Exhibit 8).  All of the Spanish deeds that were not described by township and range but by boundary descriptions also are not within Tract 24.  There are

no deeds into Adolfo Garcia to land within Tract E24 except the 1907 deed from his father for ten acres, shown on the record in this case.

Ultimately, the only record title Adolfo's descendants could produce is his father's original patent, as an heir by intestate succession, and the ten acre 1907 deed.  He would receive an undivided $1/13^{th}$ of ¾ of the total interest, along with his step-mother and his twelve siblings by intestate succession .  If his descendant's claim to title would, instead,  be under the ten acre deed, Adolfo's heirs would receive 1/16 (10 of 160 acres) of an award.  This would be less of an award than they would receive even by intestate succession.

### 2.  Adverse Possession

Adolfo Garcia's heirs have failed to prove any superior record by chain of title. They must then prove that he held  sole fee simple title during World War II by adverse possession, as against the other heirs of Juan Luis.  This requires proof of: 1. color of title acquired in good faith; 2.  payment of taxes for more than ten years;  and 3.  continuous adverse possession for more than ten years <u>Marquez vs. Padilla, 77 NM 620 , 1967, Section 37-1-22 NMSA 1978 Comp</u>.  A party asserting adverse possession must prevail on the strength of his title, not the weakness of the other party's title. <u>Rock Island Oil &  Refining Co. v. Simmons, 73 NM 142.</u>

### a. Color of title

Adolfo's chain of title acquired from his father, the original Patentee, is discussed above.   His only claim through the patent would be an undivided

9

tenancy in common interest as a descendant of Juan Luis, along with all of the others  <u>Apodaca vs Tome Land & Improvement Co., 91 NM 596.</u>  He has no other color of title beyond the ten acres given him by the 1907 deed from Juan Luis.

### b. Payment of Taxes

The only tax records produced were assessments by Sandoval County in the name of Juan Luis Garcia, (even though he was deceased) from 1934 until 1943, for 90 acres of land described as bounded:   "…N:   M Garcia heirs, S,E,W, Government." (DGM Exhibit 12).

Even this tax assessment document raises adverse ownership questions.  Which of his heirs filed the assessment?   The 1934 assessment is for "Mrs. Juan Luis Garcia", who would have been Donaciana.  The 1935 assessment is "by Gregorio Garcia" (one of Donaciana's children). This would make sense because, if Donaciana's heirs recognized the deeds given to Leonora's children, ninety acres (the amount claimed) would remain for Donaciana's heirs.  Who, then, were the heirs of "M.Garcia" on the northern boundary?  The most likely person is <u>Maria </u>Leonora Garcia, since this would account for the additional seventy acres deeded to her children by the ten acre deeds referenced in Manuel Sanchez's pleading.

Returning to Adolfo's descendant's claim that he was the sole owner, the only important conclusion reached by this tax record is that no adverse claim of title by Adolfo Garcia is shown by them.  In fact, no tax records showing payments by Adolfo were produced at all.

10

### c. Continuous adverse possession for more than ten years.

John Garcia's testimony was that his grandmother Delfinia would tell him about how family members would plant squash and beans, herd cattle to and from the land, and how her husband, Pedro Naranjo, got pneumonia during one of the drives and died (Tr. Pp 35 lines 11 through 36 line 1). On the other side, Eddie Rodriguez, son of Marina and Filadelfio Rodriguez, testified how he was told by his parents of a sawmill run by his grandfather Adolfo, and that Adolfo would also plant and harvest crops, and worked with and hired family members and others to work with him. (pp. 64 l 1 through 66 Line 25). Neither of them could pinpoint which of these activities occurred within Tract E24 or whether Adolfo ever claimed at any time to be the sole owner of it.

All of this testimony is hearsay, if it is considered to prove the truth of what is claimed, and is inadmissable for that purpose (NMRE Rules 11-801-C and 802). Even so, if one were to permit any of it for its truth, the testimony is not enough to show that the use of this property was adverse to anyone else. No one testified that there was any use of the property to the exclusion of any others, or with a claim of sole ownership. Because of the passage of time and the death or inability of any principal witnesses to demonstrate possession in the period 1915-1945, any possibility of proving adverse possession as against the others is lost to everyone.

### B. A better explanation… the 1945 stipulation

More than anything else, the original declaration of taking, the amended petitions and the only 640 judgment found reflect extreme frustration on the part

11

of the army researchers charged with the responsibility of determining the owners to this tract.  It is almost as though they threw up their hands and said: "….look, we can't decide who all of you owners are…come to an agreement about this, or nobody will ever get paid".  If they received anything like the diverse, disparate, convoluted deeds or records presented now, their frustration is entirely understood and justified.

Some of the documents existing in Cause 640 have significant relevance as present day evidence.  They provide the best explanation for the final (even though not stated in a judgment) resolution in that case by an agreement to which the parties are bound today.  This is the agreement reflected in the statement of stipulation filed by Manuel Sanchez in 1945.

As the wording of the Cause 640 Final Judgment shows, there was then, as now, great confusion and disagreement among family members about ownership.  Second, there were numerous adverse claims which were difficult to resolve.  On Leonora's side, the ten acre deeds from Juan Luis existed, which diminished the number of acres by seventy acres.  On Donaciana's side, because she survived Juan Luis, her heirs would be entitled to an additional ¼ of the total under intestate succession law at the time, diminishing Leonara's children's share.  And last, there were numerous other deeds or other conveyances  to different family members at different times which may or may not have included properties within Tract E24, may or may not have been valid, but whose validity was questionable.

Anyone who would be required to resolve those claims would be in for a lengthy, tedious and exhaustive examination to determine how all of these documents would finally fit into the ownership puzzle.  In this case, it was probably more difficult to have tried in 1945 than it is now, when witnesses were alive to contradict each other.  It was plenty difficult now.

It is most likely that the parties, with the encouragement of the army representatives, got together and resolved their differences to allow the condemnation to be completed and to be paid. This agreement makes more sense than anything else, and one can understand why it would have been an acceptable proposal by both families and the Army at that time.

Both the Manuel Sanchez pleading and the payment schedule must have existed as part of the Cause 640 record.  Together, they reflect what became a stipulation during hearings (fees and expenses for attendance at hearings were paid according to the payment schedule).  The payment schedule also substantially reflects payments (1/2 to Leonora's children, 1/2 to Donaciana's), as the stipulation provided.   That pleading and the payment schedule more likely than not were filed in Cause 640, showing an agreed upon settlement by the descendants of Juan Luis Garcia, including Adolfo.

Adolfo's descendants have failed to demonstrate any claim that he was the sole owner of Tract E24. Perhaps equally important, they have failed to show that Adolfo, in 1945 or afterwards, ever made such a claim.

Nothing in the sparse record of Cause 640 indicates that Adolfo ever raised such a claim in Cause 640.  The only references to him are:  in the

Declaration of Taking and tract maps, a statement that he and others ("Adolfo Garcia, et. al") were believed by the condemning authority to be the rightful owners; and finally, in the payment schedule, his having received his 1/7 of ½ share.

The fact that he would get more of a share by the 1945 agreement than any other claim for which documents exist (intestate descendant or recipient of a ten acre deed) was as abundantly clear then as it is today.  Therefore, that 1907 deed is most likely one of those referred to in the Manuel Sanchez 1945 pleading (even though it was recorded in 1944).  Adolfo benefited as much then by that stipulation as his descendants do now.

What is most likely true is that he was claiming an interest under his recorded deed, but became part of the settlement agreement made in 1945.  His heirs are bound to that stipulation, which is the same stipulation made in this case as to the distribution of the award, ½ to Leonora's heirs, and ½ to Donaciana's heirs.

**D.  Equitable Estoppel based upon the effect of the 1945 stipulation.**

The evidence tends to show that a settlement was reached in 1945, and that a result was finalized in Cause 640 based upon it.   However, no judgment can be found now which memorializes it. Can Adolfo's descendants now claim not only his share by intestate succession but an additional ten acres based upon the deed because it was recorded, and the others were not?

In <u>Gonzales vs. Gonzales 116 NM 838,</u> the New Mexico Supreme Court discussed the doctrine of **equitable estoppel:**

> **Equitable estoppel** is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct….and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

None of Adolfo's other siblings from Leonora asserted any right by their ten acre deeds in 1945 after the agreement.  Nor do their descendants wish to do so now.  Since both they and Adolfo's heirs equally benefit from the 1945 stipulation and the one reached now between Donaciana's heirs and Leonora's, it would be unfair, after relying upon his forbearance of a claim under this deed in 1945, to allow his descendants to assert a claim for ten acres based upon it now.

As a matter of equity, Adolfo's heirs are estopped from asserting any additional claim through his ten acre deed.  His interest is limited to his 1/7 interest in ½ of the total interest provided for in the payment schedule.  Because of Leonor's passing without issue and the inability to locate any of Guadalupe's heirs, the present-day share for calculating awards is  1/5 each for Juan Luis and Leonora Garcia's children.

## 2.  Legal Conclusions reached

Based upon these findings and that reasoning, the following conclusions of law are reached:

1. Tract E24 is an eligible tract under The Legislation.

2. The fee simple owners of Tract 24 at the time of the acquisition by the United States were Juan Luis Garcia's living children or the descendants of his deceased children, Esequiel Garcia and Guadalupe Garcia.  All of those persons except Esequiel's children Rosendo Garcia, Petrita Garcia Quintana and Rosinda Garcia Collier are deceased.  Therefore, all of those deceased persons, if they were still living would have been, and all of those living persons are, eligible claimants for an award under the Legislation.

15

10.  The persons set forth in Exhibit 4 to these Findings and Conclusions are the living eligible claimants or the known heirs of deceased eligible claimants. Their respective shares and awards based upon the formula are all set forth in that exhibit and they are eligible to receive their award according to the payment formula, as full, fair and just payment for dismissal of any claim against the Defendants in this case, and a release of any further claim against those Defendants, pursuant to section (e) of the Legislation;

11.  As a condition precedent to payment, once the approval of these Findings of Fact and Conclusions of Law by the Court becomes final, each claimant designated to receive an award in this case must execute a release of the defendants in the consolidated lawsuits with respect to such eligible claimant, in full satisfaction of any and all claims of such eligible claimant against the United States arising out of the acts described in the lawsuit.

### III. TRACT B01 AMENDMENT TO INITIAL FINDINGS AND CONCLUSIONS

#### A.  ADDITIONAL FINDINGS OF FACT

According to SM Exhibit 2, the Family Tree shows that the original owner, Zenaida Vigil Archuleta had a deceased son, Remigio Archuleta who had two children, Ray (Remigio) Archuleta Jr. and Maria Archuleta.  Maria Archuleta filed a claim for both persons, believing that she could locate Ray, even though she had not seen or heard of him for several years.  Neither she, the Pajarito Plateau Homesteader's Association nor the Special Master, after diligent search, were able to locate him.

#### B.  ADDITIONAL CONCLUSION OF LAW

The share to which Ray Archuleta Jr. would be entitled as a descendant by intestate succession of an original eligible claimant, passes to his sister, Maria, and her share according to the formula is set forth in Exhibit 4.to these Initial Findings and Conclusions.

### IV. TRACT E29 AMENDMENT TO INITIAL FINDINGS AND CONCLUSIONS

According to SM Exhibit 2, the Family Tree shows that the original owner, Jose Luis Garcia had a deceased son, Jose Luis Garcia Jr. who had five children. Two daughters, Mary Ann and Mary Jo Garcia, were from a  first marriage which ended in divorce. Three, children, Gloria Diana, Jose Leandro and Jose Malequias Martin Garcia, were by his second marriage to Eloise M. Garcia, who survived him.   Eloise M. Garcia filed a claim for all of the children, believing that she could locate Mary Ann and Mary Jo, even though she had not seen or heard of them for several years.  Neither she, the Pajarito Plateau Homesteader's

Association nor the Special Master, after diligent search, were able to locate either of these persons.

**ADDITIONAL CONCLUSION OF LAW**

The share to which Mary Ann and Mary Jo Garcia would be entitled as descendants by intestate succession of an original eligible claimant, passes to their half siblings, Gloria Diana, Jose Leandro and and their share according to the formula is set forth in Exhibit 4. to these Initial Findings and Conclusions.

**V.  SUBMITTAL STATEMENT FOR THESE FINDINGS AND CONCLUSIONS**

Upon the filing of these Findings of Fact and Conclusions of Law, any disputing claimant who disagrees with these findings has, under section D4 of the Procedure, thirty days to object to these Findings and Conclusions.  If no objection is made, upon the Court's order approving the findings, these tracts will be submitted for payment with all the rest.  In the event objections are made, the Court can provide the relief to claimants he deems proper for a final resolution of the dispute.  The Special Master is available to respond to any order the Court should make at that time.

Respectfully Submitted:

                S/_____
                JOSEPH E. CALDWELL
                SPECIAL MASTER

HCR 74 PO Box 20512
El Prado, NM, 87529
505 758 4308
jecons@taosnet.com